**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | LISA BATTLE | : | Chapter 13 |
| | Debtor(s) | : | |
| | | : | Bky. No. 07-12474ELF |

# O R D E R

**Prepetition Background**

**AND**, the Debtor, Lisa Battle ("the Debtor"), being the owner of the residential real property located at 4226 Mantua Avenue, Philadelphia, PA ("the Property") .

**AND**, the Property being secured by a mortgage dated December 16, 1999 ("the Mortgage") currently held by CCO Mortgage Corp. ("CCO").

**AND**, on December 6, 2006, CCO having filed a mortgage foreclosure action against the Debtor in the Court of Common Pleas, Philadelphia County docketed at No. 502 December Term 2006 ("the CP Action").

**AND**, on January 24, 2007 CCO having obtained a default judgment in the CP Action.

**the Bankruptcy Case**

**AND**, on April 28, 2007, the Debtor having commenced this chapter 13 bankruptcy case.

**AND**, on May 10, 2007, CCO, acting through its servicing agent, having filed a the Proof of Claim asserting a secured claim of $33,757.49 (secured by the Property), with prepetition arrears of $8,914.30 ("the Proof of Claim").

**AND**, on November 19, 2007, the Debtor having filed an Objection ("the Objection") to CCO's Proof of Claim (Docket Entry No. 24).

**AND**, on April 1, 2008, the court having held a hearing on the Objection.

-1-

**AND**, at the hearing, the parties having submitted a Stipulation of Undisputed Facts ("the Stipulation") (Docket Entry No. 40).

**AND**, on April 17, 2008, the parties having filed a Supplemental Stipulation of Undisputed Facts ("the Supplemental Stipulation") (Docket Entry No. 44).

**AND**, the parties agreeing that the Stipulation and the Supplemental Stipulation shall constitute the record for determination of the Objection.

**The Proof of Claim and the Objection thereto**

**AND**, in the Proof of Claim, CCO having included legal fees, foreclosure costs and other charges totaling $4,508.05, as part of the $8,914.30 in prepetition arrears.[1]

**AND**, in the Objection, the Debtor having disputed $2,990.00 of the $4,508.05 in charges ("the Disputed Charges," when referred to collectively) as follows:

    appraisal fees                             $ 520.00[2]

    BPO (broker's price opinion)       $ 190.00[3]

---

[1] The remaining $4,406.25 of the arrears consists of unpaid monthly instalments and late charges.

[2] CCO obtained two (2) appraisals. The first was conducted on June 7, 2006, approximately six (6) months before the commencement of the CP Action at a cost of $240.00. See Stipulation ¶10. The second was conducted on February 12, 2007, after the entry of the default judgment in the CP Action, at a cost of $280.00. Id. ¶14.

[3] The Proof of Claim and the exhibits that accompanied the Stipulation indicate that two (2) BPO's were obtained by CCO at a total cost of $190.00. This is consistent with the Proof of Claim. For some reason, the parties stipulated that the combined cost of the BPO's was $560.00. See Stipulation ¶¶9, 13. It is unnecessary for me to reconcile this inconsistency as I am disallowing the BPO cost in its entirety. See nn.9-10, infra & accompanying text.

| | |
|---|---|
| title searches | $ 580.00[4] |
| sheriff's deposit | $1,700.00[5] |

**the relevant provisions of the Mortgage**

    **AND**, Paragraph 7 of the Mortgage providing:

    **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.  Although Lender may take action under this paragraph 7, Lender does not have to do so.

    Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by  this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear  interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender  to Borrower requesting payment.

    **AND**, Paragraph 21 of the Mortgage providing that in a foreclosure proceeding, CCO is "entitled to collect all expenses incurred . . .  including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law."

---

[4]     CCO obtained two (2) title searches.  The first was conducted on October 10, 2006, shortly before the commencement of the CP Action, at a cost of $290.00. See Stipulation ¶11.  The second was conducted on January 29, 2007, shortly after the entry of the default judgment in the CP Action, at a cost of $290.00. Id. ¶12.

[5]     The parties have stipulated that the sheriff refunded $205.07 of the deposit. See Stipulation ¶19.

**AND**, CCO asserting that the Disputed Charges were all "necessary to protect the value of the property and the lender's rights by virtue of the pre-petition default," Supplemental Stipulation ¶12.[6]

**AND**, the Debtor asserting that the expenses were "unnecessary and unreasonable," Id. ¶13.

Analysis

**AND**, the Debtor having filed a chapter 13 plan that proposes to treat CCO's claim by curing the prepetition default on the Mortgage, see Plan ¶5 (Docket Entry No. 10).

**AND**, the purpose of CCO's Proof of Claim for prepetition arrears and the Objection being to determine the allowed amount of the claim for prepetition arrears and therefore, the amount that the Debtor must pay to cure the prepetition default under the Mortgage.

**AND**, 11 U.S.C. §1322(e) providing that "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."[7]

**AND**, the Court of Appeals having summarized the parties' respective evidentiary

---

[6]   I also note that in the Supplemental Stipulation, the parties stipulated that between September 7, 2006 and April 12 2007, CCO obtained eight (8) inspections "of the collateral" at a cost of $8.50 each.  Supplemental Stipulation ¶¶1-8.  These costs totals $68.00.  It is unclear why the parties submitted this information.  The itemization attached to the Proof of Claim includes $58.75 in inspection costs.  See also Exhibit "A" to CCO's Response to Objection to Proof of Claim (Docket Entry No. 28).  The Debtor did not object to these costs at the hearing.  Therefore, I do not consider them to be disputed and they will be allowed in the amount of $58.75, as set forth in the Proof of Claim.

[7]   Section 1322(e) applies only to transactions entered into after October 22, 1994.  See Pub. L. 103-394, §§ 702(b)(2)(D) (Oct. 22, 1994).  As mentioned earlier, the mortgage transaction in this case occurred in 1999.

burdens in a contested matter involving an objection to a proof of claim as follows:

> [A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted).   accord In re Gimelson, 2004 WL 2713059, at *13 (E.D. Pa. 2004); In re Galloway, 220 B.R. 236, 244 (Bankr. E.D. Pa. 1998); see also In re Patton, 2008 WL 2330981 (Bankr. E.D. Pa. June 6, 2008) (also citing Fed. R. Bankr. P. 3001(f)).

**AND**, CCO bearing the burden of persuasion with respect to the validity of its claim for reimbursement of the Disputed Charges.[8]

---

[8] Although the "black letter law" as stated in the text above, is that the objecting party must produce "evidence" to put the burden of proof to the claimant to support a properly filed proof of claim, there are situations in which the objector need not introduce formal evidence to meet the burden of production.  For example, much like a complaint that does not state a cause of action (in which case a court has discretion to deny a motion for default judgment, see, e.g. In re Park, 272 B.R. 323, 329 (Bankr. D.N.J. 2003) (default judgment may be denied where facts pleaded do not support a cause of action), a proof of claim may not be self-sustaining on its face, i.e., it may lack necessary information or contain information that undermines its validity.  Or, where the evidence that would support or invalidate a claim is uniquely within the possession or control of the claimant, a good faith objection may compel the claimant to produce evidence to support the claim.  Patton, 2008 WL 2330981, at *3 ("Where the creditor makes no effort to explain or reconcile its claim with the debtor's often sincere confusion about the status of his account, the debtor's nonspecific denial of liability may be sufficient to put the creditor to its proof"); accord In re Coates, 292 B.R. 894, 904 (Bankr. C.D. Ill. 2003) (where a prepetition mortgage arrearage that includes attorney fees and expenses  is at issue, the creditor's failure to present evidence demonstrating that the fees and costs were actually incurred and that they are reasonable, will result in denial of the fees and cost except to the extent conceded by the debtor) (citing In re Galloway, 220 B.R. 236, 244 (Bankr. E.D. Pa. 1998); In re McMillan, 182 B.R. 11,

      **AND**, CCO has failed to meet its burden of proving that the $520.00 costs of the two (2) appraisals is chargeable to the Debtor under Paragraphs 7 or 21 of the Mortgage.[9]

---

14-15 (Bankr. E.D. Pa. 1995)); see generally In re Fries, 68 B.R. 676, 685 (Bankr. E.D. Pa. 1986) (determining evidentiary burdens for contested matter arising under 11 U.S.C. §1325(b) after considering which party has best access to the relevant evidence).

      I find that this case falls within the latter category, placing the burden on CCO to produce evidence in support of its claim. The Mortgage specifies certain types of expenditures by CCO that must be reimbursed by the Debtor. With the exception to the reference to "title evidence" in Paragraph 21, neither provision specifically identifies any of the Disputed Charges as chargeable to the Debtor. The Debtor: (a) presented a plausible argument that because the charges were unnecessary and/or unreasonable, the parties' contract (i.e., the Mortgage) does not encompass reimbursement of the Disputed Charges and (b) questioned whether the amounts demanded in CCO's Proof of Claim were actually incurred by the creditor, suggesting that any entitlement that may exists has been overstated in Proof of Claim. Because the objection raises legitimate concerns regarding the validity and amount of the claim and the relevant evidence is uniquely within CCO's control, it is appropriate to place the ultimate burden of proof on CCO.

---

     [9]      CCO asserts that the costs of the two (2) appraisals are chargeable to the Debtor because they were "necessary to protect the value of the Property and Lender's rights in the Property." Mortgage ¶7 (emphasis added). The "necessity" of these appraisals (one obtained six (6) months before the initiation of foreclosure and the other after the entry of the foreclosure judgment) or the way the appraisals served to protect the property or CCO' interest in the property is not evident to me. Paragraph 7 of the Mortgage appears to be intended to permit a lender to advance money to ensure that its property rights as mortgagee are not eroded by legal actions of the borrower or other creditors or by an uninsured casualty that would diminish the value of the lender's collateral. Perhaps the appraisals are useful to CCO in making general business judgments regarding the servicing of the mortgage account, but I do not read the language of the Paragraph 7 as being broad enough to encompass every lender expenditure that has some relationship to the mortgage account.

     Nor do I see how an appraisal is a cost of foreclosure under Paragraph 21. I am unaware of any legal requirement under Pennsylvania law that an appraisal be obtained in order to initiate or prosecute a foreclosure action. See In re McMullen, 273 B.R. 558, 564 (Bankr. C.D. Ill. 2001) (same principle under Illinois law); see also In re Marks, 2005 WL 4799326, at *4 (Bankr. W.D. La. Nov. 30, 2005) (stating that a broker's price opinion is not "used" in a foreclosure proceeding but rather is obtained to provide the creditor with "some minor comfort").

     In short, CCO has presented no evidence explaining why it needed either appraisal for litigation purposes or to otherwise protect its lien position or priority. With a proper evidentiary

**AND**, CCO having not proven that the BPO charges of $190.00 are chargeable to the Debtor under Paragraph 7 or Paragraph 21 of the Mortgage.[10]

**AND**, CCO having established that the $290.00 cost of its first title search and $100.00 of the $290.00 cost of the second title search are chargeable to the Debtor.[11]

---

showing, there may be circumstances in which a lender can prove that obtaining an appraisal is necessary to protect its interest in a mortgaged property. Here, CCO has not met its burden of proof on that factual issue. Therefore, I find that the cost of the appraisals is not reimbursable under either Paragraph 7 or 21 of the Mortgage.

[10] A broker's price opinion "is a drive-by appraisal performed to give a creditor a general idea of the value of the property." Marks 2005 WL 4799326, at *3. CCO's claim for reimbursement of expenses incurred for this type of appraisal suffers from the same infirmities as its claim for reimbursement for the expenses CCO incurred in obtaining the more formal and extensive appraisals. These charges will be disallowed for the reasons discussed in n.9, supra.

[11] The costs of the title search are specifically referenced in Paragraph 21 of the Mortgage. Implicit, however, in the provision is the requirement that the costs being shifted to homeowner be reasonable. Further, because the Mortgage was in an original amount less than $50,000.00, under applicable nonbankruptcy law, CCO may collect only reasonable expenses incurred in connection with the foreclosure proceedings. Compare 41 P.S. §101 (definition of "residential mortgage") with id. §404(b) (permitting a cure of a residential mortgage by payment of reasonable and actually incurred costs of foreclosure). Prior decisions in this district have recognized that the cost of a title report obtained prior to the initiation of a foreclosure proceeding is a reasonable expense, see, e.g., In re Garnett, 99 B.R. 293 (Bankr. E.D. Pa. 1989) and that after the entry of a foreclosure judgment and before the scheduling of a sheriff's sale, the cost of a subsequent title "bringdown" (i.e., an update to the title report) is also reasonable, see In re McMillan, 182 B.R. 11, 15 (Bankr. E.D. Pa. 1995) (cited in In re Sims, 358 B.R. 217, 228 (Bankr. E.D. Pa. 2006). In this case, the cost of the pre-foreclosure title search is allowable. However, CCO has not explained and has not met its burden of establishing why it was reasonable to obtain a second, full title report, as opposed to a "bringdown," after the entry of the foreclosure judgment. Rather than disallow the cost of the second title report entirely, I have estimated the approximate cost of a bringdown and I will allow the expense in that reduced amount.

**AND**, the sheriff's sale deposit of $1,700.00, minus the refund CCO received of $205.17 being chargeable to the Debtor.[12]

**AND**, based on the foregoing, the court concluding that the Proof of Claim should be reduced by a total of $1,105.17.[13]

It is hereby **ORDERED** that

1. The Debtor's Objection to the Proof of Claim of CCO Mortgage Corp. (Claim No. 1) is

    **SUSTAINED IN PART AND OVERRULED IN PART**.

2. Claim No. 1 for secured, prepetition arrears is reduced by $1,105.17 and is **ALLOWED** in the amount of $7,809.13.

Date:   July 1, 2008

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

**Counsel**
Michael D. Ward
Attorney for Debtor

Louis P. Vitti
Attorney for CCO Mortgage Corp.

Leroy C. Etheridge
Attorney for William C. Miller, Standing Trustee

---

[12]    I understand the Debtor to be challenging the allowance of the cost for the sheriff's deposit only to the extent of that CCO received a refund.

[13]    The reductions made are as follows:

| | |
|---|---|
| $ 520.00 | appraisal fees |
| $ 190.00 | broker's price opinion |
| $ 190.00 | second title search |
| $ 205.17 | sheriff's deposit refund |
| **$1,105.17** | **TOTAL** |

-8-